DAIMLERCHRYSLER CORPORATION, Plaintiff v. H.C. KIRKHART, Individually, and
THE LAW OFFICES OF H.C. KIRKHART, Defendants

No. COA00-1370

(Filed 19 February 2002)

**Attorneys; Injunction— preliminary—solicitation of legal
business using discovery material from a separate case**

The trial court erred in an action alleging barratry, libel, tortious interference with contract, tortious interference with
prospective economic advantage, and unfair and deceptive trade
practices by granting a preliminary injunction that restricted the
manner in which defendant attorney and his law practice could
use information, obtained from plaintiff automobile corporation
through discovery in a separate action in which defendants represented two individuals in a lawsuit against plaintiff under the
Lemon Law Statute, to solicit clients and generate further litigation against plaintiff because: (1) plaintiff has failed to show a
likelihood of success on its barratry claim since North Carolina
does not recognize a civil cause of action for barratry and to the
extent that plaintiff's first cause of action is an attempt to state a
claim for champerty and maintenance, defendants' conduct is
covered by the recognized exception for the relationship
between attorney and client; (2) plaintiff has failed to show a
likelihood of success on its libel claim since defendants' communications regarding whether plaintiff had defrauded those contacted, and whether a class action had been filed, were entitled to
a qualified privilege; (3) plaintiff has failed to show a likelihood
of success on its tortious interference with contract claim since
plaintiff's complaint failed to identify any specific contract with
plaintiff that a third party had been induced not to perform as a
result of defendants' conduct; (4) plaintiff has failed to show a
likelihood of success on its tortious interference with prospective advantage claim since plaintiff failed to identify any particular contract that a third party has been induced to refrain from
entering into with plaintiff; (5) plaintiff's unfair and deceptive
trade practices claim rests on its claim for the other four torts,
and plaintiff has failed to establish a sufficient likelihood of success on the merits of these claims; and (6) the possibility that
plaintiff may have to defend itself in a lawsuit or multiple lawsuits is not a sufficiently substantial injury to support the preliminary injunction since the sanctions under N.C.G.S. § 1A-1, Rule

11 are sufficient to protect plaintiff from the possibility that defendant attorney will assist clients in filing frivolous lawsuits against plaintiff.

Appeal by Defendants from orders entered 16 May 2000 and 27 June 2000 by Judge Stafford G. Bullock in Wake County Superior Court. Heard in the Court of Appeals 6 November 2001.

*The Banks Law Firm, P.A., by R. Jonathan Charleston, John P. Roseboro, Lena D. Wade and Maricia L. Moye, for plaintiff-appellee.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by G. Lawrence Reeves, Jr., for defendant-appellants.*

CAMPBELL, Judge.

This appeal arises from the trial court's grant of a preliminary injunction which restricts the manner in which Defendants, a licensed attorney and his law practice, may use information obtained from DaimlerChrysler through discovery in a separate action in which Defendants represented Peter and Frances Pleskach ("the Pleskaches") in a lawsuit against DaimlerChrysler ("the Pleskach case"). Specifically, the trial court's preliminary injunction restrains Defendants from using information obtained through discovery in the Pleskach case to solicit clients and generate further litigation against DaimlerChrysler. Defendants bring forward numerous assignments of error challenging the trial court's findings and conclusions, and also challenging the constitutionality of the preliminary injunction. Upon careful consideration of the briefs, oral argument, transcript, and record, we dissolve the preliminary injunction entered against Defendants.

## I. Background

Defendant H.C. Kirkhart ("Kirkhart") is licensed to practice law in North Carolina and does business as The Law Offices of H.C. Kirkhart. On or about 19 April 1999, Kirkhart, as attorney for the Pleskaches, filed a complaint against DaimlerChrysler ("Plaintiff") asserting that Plaintiff had violated the New Motor Vehicles Warranties Act ("Lemon Law Statute"), *see* N.C. Gen. Stat. § 20-351 through § 20-351.10, by failing to make certain disclosures to the Pleskaches required by N.C.G.S. § 20-351.3(d), namely: that the Dodge Caravan ("Caravan") the Pleskaches had purchased from

Plaintiff had previously been repurchased by Plaintiff from its original owners as a result of the Caravan's defective condition.[1] Based on this alleged violation of the Lemon Law Statute, the Pleskaches asserted claims for fraud and unfair and deceptive trade practices. On or about 28 April 1999, DaimlerChrysler filed its answer denying the material allegations of the Pleskach complaint. DaimlerChrysler later filed a third-party complaint against A.E. Cox Corporation, d/b/a Cox Dodge, ("Cox Dodge"), the dealer from who the Pleskaches purchased the Caravan, alleging that it was Cox Dodge, rather than DaimlerChrysler, that had failed to give the Pleskaches the required disclosures.

Subsequent to filing the complaint in the Pleskach case, Kirkhart served DaimlerChrysler with a set of interrogatories and a request for production of documents, seeking, *inter alia*, the vehicle identification numbers of all vehicles that DaimlerChrysler had repurchased since 1994, the names and addresses of the original owners of these vehicles, the names and addresses of all subsequent purchasers of these buy-back vehicles, and the disclosure statements for all the buy-back vehicles that had been repurchased since 1994. DaimlerChrysler refused to produce the requested information, objecting on grounds that the request was vague, overly broad, unduly burdensome, and propounded for an improper purpose.

On 21 October 1999, Judge Gregory A. Weeks, ruling on a motion to compel discovery that had been filed by Kirkhart, ordered DaimlerChrysler to produce the materials and information requested by Kirkhart. On or about 26 November 1999, DaimlerChrysler responded to the discovery requests, but provided incomplete information, choosing to disclose only partial vehicle identification numbers, and failing to provide the names and addresses of the original and subsequent purchasers of buy-back vehicles. However, DaimlerChrysler did provide approximately 850 disclosure statements, the majority of which were not signed by the subsequent purchasers. Using these disclosure statements, which contained complete vehicle identification numbers, Kirkhart was able to determine the identity of current owners of vehicles that had previously been repurchased by DaimlerChrysler pursuant to the Lemon Law Statute. Kirkhart contacted these subsequent purchasers by letter to determine whether they had been advised that their vehicles were manu-

---

1. Kirkhart had previously represented the original owners of the Caravan, Leslie and Tiffany Clark, in an action against DaimlerChrysler which resulted in DaimlerChrysler's repurchase of the Caravan.

facturer's buy-backs. Several of the owners contacted by Kirkhart subsequently requested that he represent them in their own lawsuits against DaimlerChrysler for violations of the Lemon Law Statute. In March 2000, Kirkhart filed five additional lawsuits against DaimlerChrysler.

On 13 January 2000, DaimlerChrysler filed a motion for a temporary restraining order which was granted *ex parte* by Judge Stafford G. Bullock ("Judge Bullock"). Finding that Kirkhart had been "soliciting business in violation of the discovery rules and ethical rules applicable to all attorneys," Judge Bullock restrained him "from any actions that use discovery material to generate litigation," specifically prohibiting Kirkhart "from sending letters of solicitation to potential litigants." On 3 February 2000, Judge Henry V. Barnette ("Judge Barnette") converted this temporary restraining order into a preliminary injunction specifically prohibiting Kirkhart "from sending letters of solicitation to potential litigants whose names were discovered during discovery in [the Pleskach] case." On 2 March 2000, Judge Barnette granted the Pleskaches' motion to set aside the preliminary injunction and ordered that the injunction be withdrawn on the grounds that the trial court did not have personal jurisdiction over Kirkhart since he was not a party in the Pleskach case. On 3 March 2000, Judge Henry W. Hight, Jr., denied DaimlerChrysler's previously filed motion for a protective order, by which DaimlerChrysler sought the exact relief that had been granted by Judge Barnette's dissolved preliminary injunction.

On 6 March 2000, DaimlerChrysler filed its complaint in the instant case against Defendants alleging that Kirkhart's use of the information obtained through discovery in the Pleskach case to solicit potential clients violated N.C. Gen. Stat. § 84-38, which prohibits the solicitation of legal business, and the rules of civil discovery and ethics applicable to all attorneys. In addition to seeking a permanent injunction prohibiting Defendants from using discovery material from the Pleskach case to solicit potential litigants, DaimlerChrysler asserted the following five causes of action: (1) barratry, (2) libel, (3) prospective interference with contractual relationship, (4) tortious interference with business enterprise, and (5) unfair and deceptive trade practices.

On 2 May 2000, Judge Barnette entered a temporary restraining order identical to the injunction that had previously been entered and dissolved in the Pleskach case. On 16 May 2000, Judge Bullock

entered an order converting this temporary restraining order into a preliminary injunction. On 2 June 2000, Defendants filed a motion to dissolve or rescind the injunction, arguing (1) that no discovery rule prohibited attorneys from using information obtained through discovery in one case as the basis for instituting one or more new cases, (2) that the ethical rules of the legal profession did not prohibit the solicitation of clients, but, in fact, expressly permitted it, subject to certain restrictions, and (3) that the injunction violated Defendants' free speech rights under the First Amendment to the United States Constitution.

Defendants' motion to dissolve or rescind the injunction was heard by Judge Bullock on 12 June 2000. At the conclusion of the hearing, Judge Bullock stated:

The motion to dissolve the injunction is denied; however, the injunction may be modified to the extent that it does not violate Rule 7.3, direct contact with prospective clients[,] and to the extent that it does not violate any of the ethical rules.

Both sides submitted proposed orders to Judge Bullock reflecting their respective interpretations of his ruling. On 27 June 2000, Judge Bullock entered the order prepared by Plaintiff's counsel, which read as follows:

It is ORDERED that the defendants be and are hereby restrained from using information that the defendants obtained from the plaintiff through discovery requests to generate unrelated litigation against the plaintiff, and may not use such materials for illegal solicitation.

It is also ORDERED that the defendants in their solicitation must obey laws relating to unfair and deceptive trade practices, common law barratry, G.S. Section 84-38, which prohibits the solicitation of legal business, and Rule 26(b)(1) of the North Carolina Rules of Civil Procedure.

Defendants appealed from the injunction entered on 16 May 2000 and the modification entered on 27 June 2000. Subsequent to docketing their appeal and filing their brief, Defendants filed a petition for writ of certiorari, seeking an alternative means of obtaining immediate appellate review of the trial court's preliminary injunction.

## II. Appealability of a Preliminary Injunction

In *A.E.P. Industries v. McClure*, 308 N.C. 393, 302 S.E.2d 754 (1983), our Supreme Court addressed the appealability of preliminary injunctions as follows:

> A preliminary injunction is interlocutory in nature, issued after notice and hearing, which restrains a party pending final determination on the merits. G.S. § 1A-1, Rule 65. Pursuant to G.S. § 1-277 and G.S. § 7A-27, no appeal lies to an appellate court from an interlocutory order or ruling of a trial judge unless such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination.

*Id.* at 400, 302 S.E.2d at 759. "Thus, the threshold question presented by a purported appeal from an order granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment." *State v. School*, 299 N.C. 351, 358, 261 S.E.2d 908, 913 (1980).

In the instant case, Defendants contend that they will be deprived of a substantial right—their First Amendment right to free speech—if the trial court's preliminary injunction escapes immediate appellate review. However, we need not determine whether the preliminary injunction affects a substantial right pursuant to N.C. Gen. Stat. §§ 1-277 and 7A-27(d), because we have elected to grant Defendants' petition for writ of certiorari pursuant to N.C. R. Civ. P. 21(a)(1) to address the merits of this appeal.

## III. Standard of Review

Since Defendants have elected to appeal before the ultimate questions raised by the pleadings are decided at a trial on the merits, the sole question before us is whether the trial court erred in its issuance of the preliminary injunction.

As a general rule, a preliminary injunction

> is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977) (emphasis in original).

In reviewing a trial court's grant of a preliminary injunction, "an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Industries,* 308 N.C. at 402, 302 S.E.2d at 760. However, while this Court is not bound by the findings or ruling of the lower court, there is a presumption that the lower court's decision was correct, and the burden is on the appellant to show error. *Conference v. Creech,* 256 N.C. 128, 140, 123 S.E.2d 619, 626-27 (1962). Thus, "a decision by the trial court to issue or deny an injunction will be upheld if there is ample competent evidence to support the decision, even though the evidence may be conflicting and the appellate court could substitute its own findings." *Wrightsville Winds Homeowners' Assn. v. Miller,* 100 N.C. App. 531, 535, 397 S.E.2d 345, 346 (1990).

"Finally, we note that the findings of fact and other proceedings of the trial court which hears the application for a preliminary injunction are not binding at a trial on the merits." *Kaplan v. Prolife Action League of Greensboro,* 111 N.C. App. 1, 16, 431 S.E.2d 828, 835 (1993). "The same is true of our decision upon this appeal and our statement of the facts upon which our conclusion rests." *Board of Elders v. Jones,* 273 N.C. 174, 181, 159 S.E.2d 545, 551 (1968).

## IV.  Analysis of Plaintiff's Claims

Defendants contend that Plaintiff cannot demonstrate the requisite likelihood of success on the merits of its case to support entry of the preliminary injunction. Plaintiff's complaint alleged five separate causes of action: (1) barratry; (2) libel; (3) prospective interference with contractual relationship; (4) tortious interference with business enterprise, and (5) unfair and deceptive trade practices. In granting the preliminary injunction, the trial court did not specifically reference any of these claims. Therefore, we will examine all five of Plaintiff's claims.

### A. Barratry

Plaintiff alleged that Defendants had committed barratry by willfully, intentionally, and wantonly soliciting or attempting to solicit a large number of claims against Plaintiff in return for forty percent (40%) of the recovery from those claims. At common law, barratry was defined as " 'the offense of frequently exciting or stirring up suits and quarrels between his majesty's subjects, either at law or other-

DAIMLERCHRYSLER CORP. v. KIRKHART

[148 N.C. App. 572 (2002)]

wise.'" *State v. Batson*, 220 N.C. 411, 412, 17 S.E.2d 511, 512 (1941) (quoting 4th Blackstone, p. 134). The common law offense of barratry has also "'been applied independently of statute to one soliciting a large number of claims of the same nature, and charging a fee for his services in connection with the claim contingent on the amount recovered.'" *Id.* at 413, 17 S.E.2d at 512 (quoting 10 Am. Jur. *Champerty and Maintenance*, par. 3, p. 551). In *Batson*, our Supreme Court held that the common law offense of barratry was still in full force and effect in this State, stating, in pertinent part:

> Barratry being a common law offense, and having never been the subject of legislation in North Carolina, and not being destructive nor repugnant to, nor inconsistent with, the form of government of the State, is in full force therein.

*Id.* Subsequent to the Court's decision in *Batson*, the General Assembly enacted N.C. Gen. Stat. § 84-38, which codified in part the common law offense of barratry. N.C.G.S. § 84-38 remains in effect, and reads in pertinent part:

> It shall be unlawful for any person . . . to solicit or procure through solicitation either directly or indirectly, any legal business whether to be performed in this State or elsewhere, or to solicit or procure through solicitation either directly or indirectly, a retainer or contract, written or oral, or any agreement authorizing an attorney . . . to perform or render any legal services, whether to be performed in this State or elsewhere.

N.C. Gen. Stat. § 84-38 (1999).

While the General Assembly has chosen to codify the common law offense of barratry in the context of the solicitation of legal business, we find no decision of the Supreme Court or this Court recognizing the existence of a civil cause of action based on the common law principle of barratry.

However, the courts of this State have applied the related common law principles of champerty and maintenance in the context of a civil action. *See Merrel v. Stuart*, 220 N.C. 326, 17 S.E.2d 458 (1941); *Smith v. Hartsell*, 150 N.C. 71, 63 S.E. 172 (1908); *Wright v. Commercial Union Ins. Co.*, 63 N.C. App. 465, 305 S.E.2d 190 (1983). "The term "maintenance" has been defined by our courts as 'an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it.'" *Wright*, 63 N.C. App. at 469, 305 S.E.2d at

192 (quoting *Smith v. Hartsell*, 150 N.C. 71, 76, 63 S.E. 172, 174 (1908)). " "Champerty" is a form of maintenance whereby a stranger makes a 'bargain with a plaintiff or defendant to divide the land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense.' " *Id.* (quoting same). While recognizing their continued force and effect in this State, our Supreme Court in *Smith* noted that many exceptions to the principles of champerty and maintenance have been recognized, "so that they may be adapted to the new order of things in the present highly progressive and commercial age." *Smith*, 150 N.C. at 77, 63 S.E. at 174. Among the exceptions recognized by the Court in *Smith* is that the relationship of attorney and client will often justify parties in giving each other assistance in lawsuits. *Id.* at 77, 63 S.E. at 175.

Based on our reading of the Supreme Court's decision in *Batson*, and other learned authorities on the subject, we conclude that the common law offense of barratry was a crime against the Crown (i.e, the State), but did not support a civil cause of action against a private individual, whereas the related principles of champerty and maintenance did create a civil cause of action that could be brought against another person. Therefore, our Supreme Court's recognition of the common law offense of barratry in *Batson*, and the General Assembly's subsequent codification of barratry in the context of the solicitation of legal business, do not support the existence of a civil cause of action for barratry. In addition, a mere violation of N.C.G.S. § 84-38 does not form the basis for a civil cause of action against the alleged violator. *See Wilson v. Bellamy*, 105 N.C. App. 446, 464, 414 S.E.2d 347, 357 (1992) (quoting 74 Am. Jur. 2d *Torts* § 1 (1974)) ("no civil right can be predicated upon a mere violation of a criminal statute, . . .; the crime is an offense against the public pursued by the sovereign, the tort is a private injury pursued by the injured party").[2] Therefore, we conclude that there does not exist in this State a civil cause of action for barratry. Further, to the extent that Plaintiff's first cause of action is an attempt to state a claim for champerty and maintenance, we conclude that Defendants' conduct is covered by the recognized exception for the relationship between attorney and client. For the foregoing reasons, we conclude that Plaintiff

2. We also note that application of N.C.G.S. § 84-38 to prohibit licensed attorneys from soliciting legal business through targeted, direct-mail solicitations would raise serious constitutional questions in light of the United States Supreme Court's decision in *Shapero v. Kentucky Bar Assn.*, 486 U.S. 466, 100 L. Ed. 2d 475 (1988).

DAIMLERCHRYSLER CORP. v. KIRKHART

[148 N.C. App. 572 (2002)]

has failed to show a likelihood of success on the merits of its first cause of action.

### B. Libel

In its complaint, Plaintiff's libel claim was set forth in the following paragraphs:

27. That, upon information and belief, Defendant intentionally, willfully, wantonly and maliciously sent letters to purchasers of previously owned vehicles sold by Plaintiff informing them of certain "rights" and intimating that there was a class action in effect against the Plaintiff concerning the resale of the vehicles. That, upon information and belief, there is no class action filed in any jurisdiction in the State of North Carolina.

28. That said statement and/or intimation of the Defendant in his letter was false, designed to mislead and did mislead or had the capacity to mislead. That the Plaintiff has sustained actual damages of $1.00 or more in counsel fees expended in an effort to stop and restrain further publication of the letter or further activities with regard to the letter. That the Plaintiff further seeks actual and punitive damages in an amount to be determined by the trier of fact.

In addition, Plaintiff alleged that Defendants had informed potential witnesses in the Pleskach case that they had been defrauded by Plaintiff without any judicial determination to support this assertion. In support of its allegations, Plaintiff attached as an exhibit to its complaint an affidavit by Jace Stowe, a customer relations manager for DaimlerChrysler, which contained the following paragraph:

5. The customer indicated as a result of the letter, he had a follow-up conversation with the attorney's [Defendants'] office, and was informed that counsel was looking into a class action lawsuit based on disclosure notices against DaimlerChrysler, and that counsel would make 40 cents on the dollar of any recovery.

Plaintiff also attached to its complaint a copy of a letter sent by Defendants to a subsequent purchaser of one of DaimlerChrysler's manufacturer's buy-backs, informing the subsequent purchaser of the requirements of the Lemon Law Statute and implying that the subsequent purchaser may not have received full disclosure of the defects in his vehicle. This letter asked the subsequent purchaser to contact Defendants, but did not expressly state that Defendants

would like to represent the subsequent purchaser in a suit against DaimlerChrysler.

In sum, Plaintiff's libel claim against Defendants is based on allegations that Defendants informed certain individuals that they had been defrauded by Plaintiff without any judicial determination to support the charge, and intimated to those individuals that a class action lawsuit had been filed against Plaintiff when no such lawsuit had in fact been filed.

"Libel is defined as written defamation." *Market America, Inc. v. Christman-Orth*, 135 N.C. App. 143, 149, 520 S.E.2d 570, 576 (1999). The three classes of libel long recognized under North Carolina law are:

> "(1) publications obviously defamatory which are called libel *per se*; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo, colloquium, and explanatory circumstances become libelous, which are termed libels *per quod*."

*Renwick v. News and Observer*, 310 N.C. 312, 316, 312 S.E.2d 405, 408 (1984) (quoting *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979)).

Plaintiff's complaint in the instant case does not bring Defendants' communications within the second class of libel, since it is not alleged that the communications are "susceptible of two meanings, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom the publication was made." *Id.* at 317, 312 S.E.2d at 408; *see also Flake v. News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1938). Further, Plaintiff does not have a reasonable likelihood of success on the merits of its claim under the third class of libel—libel *per quod*—since it does not appear that Defendants intended for the communications to be defamatory, or that those who received the communications understood them to be defamatory. *See Robinson v. Insurance Co.*, 273 N.C. 391, 394, 159 S.E.2d 896, 899 (1968); *U v. Duke University*, 91 N.C. App. 171, 181, 371 S.E.2d 701, 708 (1988). The record shows that the alleged defamatory communications were made to subsequent purchasers of Plaintiff's manufacturer's buy-backs in an attempt to secure them as witnesses in the Pleskach case, or to generate additional litigation against Plaintiff. There is no evidence that Defendants made the com-

munications with the intent to defame DaimlerChrysler or to injure its reputation in any way. Therefore, we focus our attention on the law relative to the first class of libel—libel *per se.*

Under the law of North Carolina, a libel *per se* is a publication which, when considered alone without innuendo or explanation: "(1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick,* 310 N.C. at 317, 312 S.E.2d at 409.

"However, even where a statement is found to be actionable *per se,* the law regards certain communications as privileged." *Market America,* 135 N.C. App. at 150, 520 S.E.2d at 576. A qualified privilege exists when a communication is made:

> "(1) on subject matter (a) in which the declarant has an interest, or (b) in reference to which the declarant has a right or duty, (2) to a person having a corresponding interest, right, or duty, (3) on a privileged occasion, and (4) in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest."

*Phillips v. Winston-Salem/Forsyth County Bd. of Educ.,* 117 N.C. App. 274, 278, 450 S.E.2d 753, 756 (1994) (quoting *Clark v. Brown,* 99 N.C. App. 255, 262, 393 S.E.2d 137, 138 (1990)). "The essential elements for the qualified privilege to exist are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion and publication in a manner and [to] the proper parties only." *Long v. Vertical Technologies, Inc.,* 113 N.C. App. 598, 602, 439 S.E.2d 797, 800 (1994). "Whether a communication is privileged is a question of law for the court to resolve, unless a dispute concerning the circumstances of the communication exists, in which case it is a mixed question of law and fact." *Market America,* 135 N.C. App. at 150, 520 S.E.2d at 576. Where the privilege exists, a presumption arises "that the communication was made in good faith and without malice." *Phillips,* 117 N.C. App. at 278, 450 S.E.2d at 756. To rebut this presumption, the plaintiff must show actual malice or excessive publication. *Harris v. Proctor & Gamble,* 102 N.C. App. 329, 401 S.E.2d 849 (1991).

In the instant case, we find that Defendants' communications regarding whether Plaintiff had defrauded those contacted, and

whether a class action had been filed, were entitled to a qualified privilege. As attorney for the Pleskaches, Kirkhart had a legitimate interest in contacting those individuals who might provide information useful to proving the allegations in the Pleskach case. Kirkhart also had an interest, although likely influenced by the selfish possibility of pecuniary gain, in determining whether those individuals contacted had been defrauded by Plaintiff and wished to hire Kirkhart to assist them in seeking legal redress. Those individuals contacted by Defendants had a definite interest in whether Plaintiff had complied with the law in its dealings with them. The communications took place in private letters, and appear to have been sent in good faith and in a manner fairly warranted under the circumstances. Finally, the record shows no evidence of actual malice or excessive publication. Therefore, we conclude that under these circumstances, Defendants' communications were protected by a qualified privilege.

For the foregoing reasons, we conclude that Plaintiff has failed to show a likelihood of success on the merits of its libel claim.

## C. Tortious Interference With Contract

In its third cause of action, Plaintiff alleged that Defendants' solicitation, or attempted solicitation, of clients to file lawsuits against Plaintiff had interfered with the contractual relationships between Plaintiff and those individuals being solicited, thereby damaging the goodwill between Plaintiff and those solicited. While Plaintiff titles this cause of action prospective interference with contractual relationship, it appears to be based on alleged interference with the existing contractual relationships between Plaintiff and those individuals being contacted by Defendants. Thus, we analyze it as a claim for tortious interference with contract.

The five elements of tortious interference with contract were set forth by the Supreme Court in *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 370 S.E.2d 375 (1988), as follows:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Id.* at 661, 370 S.E.2d at 387. Plaintiff's complaint fails to identify any specific contract with DaimlerChrysler that a third party has been

induced not to perform as a result of Defendants' conduct. Therefore, we conclude that Plaintiff has failed to show a likelihood of success on the merits of its tortious interference with contract claim.

## D. Tortious Interference with Prospective Economic Advantage

Plaintiff's fourth cause of action asserts that Defendants' actions have interfered with public confidence in the quality of vehicles resold by Plaintiff, thereby damaging Plaintiff's goodwill. We read these allegations as an attempt to state a claim for tortious interference with prospective economic advantage.

In order to maintain an action for tortious interference with prospective advantage, Plaintiff must show that Defendants induced a third party to refrain from entering into a contract with Plaintiff without justification. *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982). Additionally, Plaintiff must show that the contract would have ensued but for Defendants' interference. *Id.*

Here, Plaintiff has failed to identify any particular contract that a third party has been induced to refrain from entering into with Plaintiff. Thus, Plaintiff has failed to establish a likelihood of success on the merits of its tortious interference with prospective advantage claim.

## E. Unfair and Deceptive Trade Practices

In its final cause of action, Plaintiff alleged that Defendants' activities in soliciting and attempting to solicit clients constituted unfair and deceptive trade practices. N.C. Gen. Stat. § 75-1.1(a) ("the Act") provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a) (1999). Although the Act was intended to benefit consumers, its protections do extend to businesses in appropriate situations. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 710 (2001). In order to prevail on a claim for unfair and deceptive trade practices, a plaintiff must show: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Id.* at 656, 548 S.E.2d at 711.

Plaintiff's unfair and deceptive trade practices claim rests on its claims for barratry, libel, tortious interference with contract and tor-

tious interference with prospective economic advantage. Having concluded that Plaintiff has failed to establish a sufficient likelihood of success on the merits of these claims, we likewise find an insufficient likelihood of success on Plaintiff's unfair and deceptive trade practices claim.

In sum, we conclude that Plaintiff has failed to show a likelihood of success on the merits of any of its claims. Thus, the preliminary injunction was not properly entered and is hereby dissolved. To further support our decision to dissolve the preliminary injunction, we choose to analyze whether Plaintiff is likely to suffer irreparable loss if the injunction is dissolved.

## V. Irreparable Loss

"A prohibitory preliminary injunction is granted only when irreparable injury is real and immediate." *Telephone Co. v. Plastics, Inc.*, 287 N.C. 232, 235, 214 S.E.2d 49, 51 (1975). As stated by the Court in *Board of Elders v. Jones*, 273 N.C. 174, 159 S.E.2d 545 (1968):

> The burden is upon the applicant for an interlocutory injunction to prove a probability of substantial injury to the applicant from the continuance of the activity of which it complains to the final determination of the action. . . . An injunction *pendente lite* should not be granted where there is a serious question as to the right of the defendant to engage in the activity and to forbid the defendant to do so, pending the final determination of the matter, would cause the defendant greater damage than the plaintiff would sustain from the continuance of the activity while the litigation is pending.

*Id.* at 182, 159 S.E.2d at 551-52. Further, "[a]n applicant for a preliminary injunction must do more than merely allege that irreparable injury will occur[;] [t]he applicant is required to set forth with particularity facts supporting such statements so the court can decide for itself if irreparable injury will occur." *Telephone Co.*, 287 N.C. at 236, 214 S.E.2d at 52.

Plaintiff alleged that it would suffer irreparable injury from the continuance of Defendants' solicitation "in that it will have to defend multiple lawsuits instigated by the Defendant[s]." However, we conclude that the possibility that Plaintiff may have to defend itself in a lawsuit, or multiple lawsuits, is not a sufficiently substantial injury to support the preliminary injunction. First, the mere fact that an indi-

**DAIMLERCHRYSLER CORP. v. KIRKHART**

[148 N.C. App. 572 (2002)]

vidual or a corporation may have to defend itself against a lawsuit that is warranted under existing law and not brought for an improper purpose does not rise to the level of an injury sufficient to support the grant of a preliminary injunction. Second, the provisions of N.C. R. Civ. P. 11 ("Rule 11") adequately protect Plaintiff against the possibility that a large number of frivolous lawsuits will be filed as a result of Kirkhart's solicitation. Plaintiff is entitled to seek sanctions under Rule 11(a) if it appears that suits have been filed against it which are not warranted by existing law or a good faith extension of existing law. N.C. R. Civ. P. 11(a) (1999). These sanctions, which include reasonable expenses and attorney's fees, can be imposed not only on the party filing the suit, but also against the party's attorney. *Id.* Thus, we find that the provisions of Rule 11 are sufficient to protect Plaintiff from the possibility that Kirkhart will assist clients in filing frivolous lawsuits against Plaintiff. Finally, a serious constitutional question exists as to whether Defendants can be prohibited from engaging in the activity complained of by Plaintiff. Having weighed the equities and the advantages and disadvantages to the parties, we conclude that Plaintiff has failed to show a reasonable probability of substantial injury if the preliminary injunction does not stand.

## VI. Conclusion

We conclude that Plaintiff has failed to show a reasonable likelihood of success on the merits of its case, and has failed to show a reasonable probability of substantial injury if the injunction does not stand. Thus, we hold that it was error to grant the preliminary injunction and it is hereby dissolved. Having so concluded, we need not consider the First Amendment arguments advanced by Defendants concerning the nature and scope of the injunctive relief.

For the reasons stated, the orders of the trial court granting the preliminary injunction are reversed and the case is remanded to the Superior Court of Wake County for trial on its merits. We reiterate that this Court's ruling dissolving the preliminary injunction has no bearing on the rights of the parties when the action is tried on its merits. *Telephone Co.*, 287 N.C. at 237, 214 S.E.2d at 52; *Board of Elders*, 273 N.C. at 181, 159 S.E.2d at 551.

Reversed and remanded.

Judges GREENE and JOHN concur.