Epic Chophouse, LLC v. Morasso, 2019 NCBC 54.

STATE OF NORTH CAROLINA

IREDELL COUNTY

EPIC CHOPHOUSE, LLC;
RICHARD D. MACK; and LARRY
SPONAUGLE,

              Plaintiffs,

v.

JAMES A. MORASSO; JAM
RESTAURANT GROUP, INC.;
CHILLFIRE GRILL, LLC; and
WEBB CUSTOM KITCHEN, LLC,

              Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 2372

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS**

1. This case arises out of a dispute between the members of Epic Chophouse, LLC ("Epic"), a North Carolina limited liability company that operates a restaurant by the same name. Epic and two of its members, Richard Mack and Larry Sponaugle, allege that the third member, James Morasso, abandoned his duties as Epic's general manager and worked against Epic to benefit two other restaurants. Due to those alleged bad acts, Mack and Sponaugle voted to oust Morasso from the business. They, along with Epic, then brought this suit against Morasso and three companies he either owns or manages.

2. All four defendants filed this motion under Rules 12(b)(6) and 12(c) of the North Carolina Rules of Civil Procedure seeking to narrow the claims against them. For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motion.

*David P. Parker, PLLC, by David P. Parker, for Plaintiffs Epic Chophouse, LLC, Richard D. Mack, and Larry Sponaugle.*

*Sellers, Ayers, Dortch & Lyons, P.A., by Brett Dressler and Michelle Massingale Dressler, for Defendants James A. Morasso, JAM Restaurant Group, Inc., Chillfire Grill, LLC, and Webb Custom Kitchen, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a motion for judgment on the pleadings. The following factual summary is drawn from relevant allegations in the complaint. (ECF No. 3 ["Compl."].)

4. The complaint does not provide much detail about Epic's governance or the restaurant it operates. Originally developed as Hominy & Hogg Concord, LLC in 2009, the company changed its name to Epic Chophouse, LLC about a year later. (Compl. ¶¶ 3, 8, 10.) Mack, Sponaugle, and Morasso[1] were its founders and only members. (*See* Compl. ¶ 8.) Shortly after Epic's formation, the three entered into an operating agreement, which was later amended at least twice. (*See* Compl. ¶¶ 8, 13.)

5. The operating agreement is not attached to the complaint, but Epic, Mack, and Sponaugle allege that it contains several provisions setting the bounds of the members' authority. Among other things, the operating agreement allegedly states that Mack, Sponaugle, and Morasso are "1/3 equal partners"; that any "major decision" requires all three partners' signatures and approval; and that "[n]o partner may use the company as leverage for any personal or other means without full

---

[1] There is some confusion over whether Epic's third member is Morasso or JAM Restaurant Group, Inc. ("JAM"). As one of their claims for relief, Epic, Mack, and Sponaugle seek a declaratory judgment to resolve the confusion. (*See* Compl. ¶¶ 86, 94.) For ease of reference, and because Morasso is JAM's registered agent and president, the Court refers to Epic's third member as "Morasso." (Compl. ¶ 5.)

consent of the other two partners." (Compl. ¶¶ 9, 13.) The agreement also designates Morasso as general manager with authority to handle the daily on-site operations at the restaurant, such as maintaining food quality and working with customers. (*See* Compl. ¶¶ 9, 11, 12.)

6. Over the next four years, Morasso began to expand into other restaurants—in addition to being Epic's general manager, he is the sole owner of Webb Custom Kitchen, LLC ("Webb") and a manager at Chillfire Grill, LLC ("Chillfire"). (Compl. ¶¶ 15, 20.) According to the complaint, Morasso has used his position at Epic to increase Chillfire and Webb's profitability while leaving Epic out to dry. For example, when Morasso proposed switching Epic's food vendor, neither Mack nor Sponaugle granted permission. (Compl. ¶¶ 15, 16.) Morasso secretly and unilaterally made the switch anyway in order to secure a volume discount for one or both of his other restaurants. (*See* Compl. ¶¶ 16, 17.) Morasso later used Epic as leverage to secure other beneficial deals for Chillfire and Webb, including contracts for credit card merchant accounts and payroll company charges. (Compl. ¶ 23.) As a result, Chillfire and Webb enjoy lower prices or costs at Epic's expense. (Compl. ¶¶ 18, 19, 24.)

7. In addition to using Epic as a bargaining chip, Morasso neglected his duties as its general manager. (*See* Compl. ¶ 15.) Morasso began spending most of his time at Chillfire and Webb, overseeing their social media outlets but not Epic's, and encouraging Epic's customers to patronize his other restaurants. (Compl. ¶¶ 20, 22, 25.) Epic has had to hire another general manager to perform Morasso's duties. (Compl. ¶ 21.)

8. Tensions boiled over during a September 2018 members' meeting. Mack and Sponaugle voted to remove Morasso for cause from his positions as member and general manager of Epic. (*See* Compl. ¶¶ 27, 28.) They also voted to authorize a lawsuit against Morasso, both by waiving the 90-day notice required for Mack and Sponaugle to bring a derivative action on Epic's behalf and by directing Epic to join litigation on its own or jointly with Mack and Sponaugle. (Compl. ¶ 28.) At the conclusion of the meeting, a notice of trespass was issued forbidding Morasso from entering the premises, which he allegedly violated twice. (Compl. ¶¶ 28–33.)

9. Epic, Mack, and Sponaugle brought this action against Morasso, JAM, Chillfire, and Webb. They claim that Morasso breached the operating agreement, breached his fiduciary duty, committed trespass, tortiously interfered with Epic's contracts, and committed unfair or deceptive trade practices. They also seek a declaratory judgment establishing the identity of Epic's members and the amount of Morasso's buyout under the operating agreement. Epic asserts each of these six claims directly in its own right, and Mack and Sponaugle also assert the same claims individually in their own right. Finally, the complaint includes a separate cause of action entitled "Derivative Action," in which Mack and Sponaugle seek relief on Epic's behalf.

10. All four defendants jointly moved to dismiss the individual claims of Mack and Sponaugle, the "Derivative Action" of Mack and Sponaugle, and the claim for tortious interference with contract. They filed their motion and a brief in support on June 21, 2019. (ECF Nos. 28–30.) Epic, Mack, and Sponaugle did not respond within

the time allotted by Business Court Rule 7.6 and have not filed a response as of the date of this Order and Opinion. Accordingly, the Court considers and decides the motion "as an uncontested motion" and elects to do so without a hearing. (BCR 7.4, 7.6.)

## II.
## ANALYSIS

11. Defendants dedicate the bulk of their brief to the claims of Mack and Sponaugle, arguing that they lack standing to bring suit either individually in their own name or derivatively on Epic's behalf.[2] (Mem. in Supp. 3–6, ECF No. 30.) Standing is "a threshold issue that must be addressed, and found to exist, before the merits of the case are judicially resolved." *Byron v. SYNCO Props.*, 813 S.E.2d 455, 458 (N.C. Ct. App. 2018) (citation and quotation marks omitted). The Court therefore begins with standing before addressing a second issue, which concerns whether the complaint sufficiently states a claim for tortious interference with contract. (Mem. in Supp. 6–7.)

## A. <u>Standing</u>

12. "One of the oldest and most basic powers of a corporation is the power to sue and be sued in its own name." Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 3.03 (7th ed. 2018). This power is inherent, a function of the corporation's status as a distinct legal entity that exists separate and apart from its shareholders. *See, e.g.*, *Bd. of Transp. v. Martin*, 296 N.C. 20, 28, 249 S.E.2d 390, 396

---

[2] This aspect of the motion is jurisdictional in nature, and the Court construes it as a motion under Rule 12(b)(1), though the defendants did not cite that rule.

(1978); *Troy Lumber Co. v. Hunt*, 251 N.C. 624, 112 S.E.2d 132 (1960). The same power also inheres in a limited liability company, which is "an entity distinct from its interest owners" and which "has the same powers as an individual or a domestic corporation to do all things necessary or convenient to carry out its business." N.C.G.S. §§ 57D-2-01(a); 57D-2-03.

13. From this fundamental principle comes another: an individual owner, whether shareholder or LLC member, typically may not bring an action in his or her own name to enforce claims accruing to the company. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000). There are good reasons for this. One is that "the duties, the breaches of which constitute the ground of action, are duties to the corporation, considered as a legal entity, and not duties to any particular stockholder." *Coble v. Beall*, 130 N.C. 533, 536, 41 S.E. 793, 794 (1902). A second reason is that the harm to individual shareholders or members through diminution of the value of their stock or membership interest is derivative of the broader injury to the company. The individuals are made whole when the company recovers. *See, e.g., Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir. 1993); *Empire Life Ins. Co. v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir. 1972). Leaving such claims in the hands of the corporation or LLC therefore serves to limit the multiplication of suits by individual owners and to respect its existence as a distinct legal entity.

14. In some circumstances, a shareholder or member may enforce a cause of action accruing to the company through a derivative action on the company's behalf.

A derivative action is "one of the remedies which equity designed for those situations where the management through fraud, neglect of duty or other cause declines to take the proper and necessary steps to assert the rights which the corporation has." *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 204, 773 S.E.2d 78, 87 (2015) (quoting *Meyer v. Fleming*, 327 U.S. 161, 167 (1946)) (emphasis omitted). The individual owner does not bring a derivative claim in his or her own name. Rather, the company remains the real party in interest. *See id.*; N.C.G.S. § 57D-8-01(b) (derivative action by LLC member is one brought "in the right of an LLC"). And any recovery from a derivative action flows to the company, not to the shareholder or member bringing suit. *See Outen v. Mical*, 118 N.C. App. 263, 266, 454 S.E.2d 883, 885 (1995).

15. Of course, individual owners remain free to seek redress for harms or wrongs that are peculiar to them. This includes an action arising out of a special duty, such as a contractual duty, between the wrongdoer and the individual or an action for personal injuries that are separate and distinct from the injuries sustained by the corporation or LLC. *See Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 612, 821 S.E.2d 729, 734 (2018) (citations and alterations omitted). In these circumstances, the shareholder or member may pursue an individual action even if the corporation or LLC "also has a cause of action arising from the same wrong." *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 219 (1997). This, too, makes sense. Any such action is one accruing to the individual, not to the

company, and the company's recovery for its own injuries would not make the individual whole.

16. These principles are settled and familiar. Why retread them here? The unusual posture of this case requires it. Epic, an LLC, brought this action in its own name to pursue several claims against Morasso, its former general manager. Mack and Sponaugle, as members of Epic, assert the exact same claims individually and in their own right. And for good measure, Mack and Sponaugle also assert a standalone claim labeled "Derivative Action," which appears to be an effort to bring some or all of the claims on Epic's behalf. In short, this is a direct action by the company, an individual member action, and a derivative action all in one. Something is amiss.

17. To begin, the "Derivative Action" is wholly out of place. Because "the corporation is the real party in interest, it follows that derivative actions are typically appropriate only when a corporation is unwilling or unable to litigate its claims for itself." *Anderson*, 241 N.C. App. at 204, 773 S.E.2d at 87. That is not the case here. Epic is a named plaintiff in this action, willingly litigating all asserted claims for itself. Thus, one of the essential preconditions of a derivative action is absent.[3]

---

[3] The opening brief cites the statutory preconditions contained in former section 57C-8-01(a), which stated in part that a derivative action was proper only if "the plaintiff does not have authority to cause the limited liability company to sue in its own right." (Mem. in Supp. 3.) Section 57C-8-01 was repealed some years ago. The current statute simplifies and refines various preconditions for derivative actions, such as the demand requirement. *See* N.C.G.S. § 57D-8-01. This statutory revision is not directly relevant for present purposes. Here, the problem with Mack and Sponaugle's derivative claim is even more fundamental, having to do with the very nature of a derivative claim. The purpose of a derivative claim is to permit the member to assert a right or claim that the LLC has not asserted. In simple terms, the member is allowed to step into the shoes of the LLC but only if the LLC isn't already wearing them.

18. Given their failure to file an opposition, Mack and Sponaugle have offered no reason to support their standing to pursue a derivative action either alongside or in lieu of Epic's action. And the Court perceives none. There is no question that the asserted claims are claims accruing to Epic. They involve, among other things, an alleged breach of Morasso's fiduciary duty to Epic, a trespass to its property, and interference with its contracts. All address duties owed to Epic and resulting injuries to it. No party has suggested that Epic is incapable of fully and adequately litigating these claims to completion, and the reasons that led equity to design the derivative action so long ago are simply not present here. Allowing Mack and Sponaugle to pursue identical claims on Epic's behalf would only complicate matters, making it unclear who speaks for the company and potentially bringing into play remedies that would otherwise be unavailable. *See* N.C.G.S. § 57D-8-05 (addressing payment of each party's expenses in derivative actions). The Court therefore concludes that Mack and Sponaugle lack standing to pursue a derivative action, and the claim entitled "Derivative Action" is dismissed without prejudice.

19. Many of the individual claims are also jurisdictionally deficient. The complaint does not specify any separate and distinct injury to Mack and Sponaugle resulting from Morasso's alleged breach of the operating agreement, breach of fiduciary duty, trespass, tortious interference with contract, or unfair or deceptive trade practices. In each case, they seek recovery based on financial harm to Epic, such as lost profits, a reduced customer base, and other "damage to the business" from Morasso's allegedly anticompetitive actions. (*See, e.g.*, Compl. ¶¶ 42, 46, 58, 65,

66, 70.) These types of harms are plainly injuries to the company shared by all members proportionately. At points, the complaint even concedes that Mack and Sponaugle have been damaged in their capacities "as one third Members" of Epic. (Compl. ¶¶ 42, 50.)

20. Nor does the complaint allege a special duty. One potential candidate would be a fiduciary duty owed by Morasso to Mack and Sponaugle. In general, though, members of an LLC do not owe a fiduciary duty to one another or to the company, and managers owe a fiduciary duty only to the company. *See Kaplan v. O.K. Techs., L.L.C.,* 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009). The exceptions to these rules—such as the duty that a controlling member may owe to other minority members—do not apply here. As a result, the complaint does not include any allegations that Morasso, whether in his role as member or manager, owed a fiduciary duty to Epic's other members.

21. Another potential candidate would be a contractual duty imposed by the operating agreement. But the operating agreement is not attached to the complaint, and none of the allegations show that the operating agreement imposed a duty upon Morasso that was personal to Mack and Sponaugle as members. The claim for breach of the operating agreement is premised on allegations that Morasso leveraged Epic for his own benefit, abandoned his managerial duties, and generally failed to act in Epic's best interests. (*See* Compl. ¶¶ 9, 42.) As alleged, any duty that Morasso owed to Mack and Sponaugle was not personal to them as members and "separate and

distinct from the duty" Morasso owed to Epic. *Barger*, 346 N.C. at 659, 488 S.E.2d at 220.

22. In sum, the complaint does not allege any special injury or special duty to support Mack and Sponaugle's right to assert individual claims for breach of the operating agreement, breach of fiduciary duty, trespass, tortious interference with contract, or unfair or deceptive trade practices. Therefore, these claims are dismissed without prejudice for lack of standing.

23. That leaves the claim for declaratory judgment. This claim seeks to settle disputes about who Epic's members are and about the amount of any buyout of Morasso's membership interest. (*See* Compl. ¶ 94.) Mack and Sponaugle bring this claim in their capacities as parties to the operating agreement, seeking a declaration as to its interpretation. (*See* Compl. ¶ 92.) By statute, parties to a contract have standing to seek this type of declaratory relief. *See* N.C.G.S. § 1-254. This right is personal to Mack and Sponaugle and distinct from Epic's own right, also as a party to the operating agreement, to seek declaratory relief. The Court therefore denies Morasso's motion as to Mack and Sponaugle's individual claim for declaratory judgment.

### B. Tortious Interference with Contract

24. Morasso separately argues that Epic's claim for tortious interference with contract should be dismissed under either Rule 12(b)(6) or Rule 12(c). (Mot., ECF No. 28.) Because each defendant had already answered the complaint at the time the motion was filed, (ECF Nos. 12–14), it is untimely under Rule 12(b)(6). Accordingly,

the Court applies the Rule 12(c) standard. *See New Friendship Used Clothing Collection, LLC v. Katz*, 2017 NCBC LEXIS 72, at *24 (N.C. Super. Ct. Aug. 18, 2017) ("[A] post-answer Rule 12(b) motion to dismiss for failure to state a claim may, if appropriate, be considered as a Rule 12(c) motion for judgment on the pleadings.").

25. "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008). "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). A Rule 12(c) motion "should be granted when a complaint fails to allege facts sufficient to state a cause of action . . . ." *Robertson v. Boyd*, 88 N.C. App. 437, 440, 363 S.E.2d 672, 675 (1988).

26. The complaint's allegations in support of this claim are thin. As stated, Morasso's alleged wrongful acts include "[t]respass, changing food vendors, leveraging Epic's volume, and other actions." (Compl. ¶ 65.) Even under Rule 12(c)'s liberal standard, these threadbare allegations are inadequate.

27. An essential element of any claim for tortious interference with contract is the existence of a valid contract between the plaintiff and a third party. *See DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 584–85, 561 S.E.2d 276, 285 (2002). Apart from the allegation that Morasso improperly switched Epic's food vendors, this element is absent. The alleged trespass does not appear to involve any

contract at all; the complaint states vaguely that Morasso caused a disturbance at the restaurant while "many customers" were there. (Compl. ¶ 31.) The allegations of leveraging do involve contracts but only to the extent that Morasso used Epic as a means to get better deals for Webb and Chillfire. (Compl. ¶ 23.) The complaint does not allege that this improper leveraging interfered with Epic's own contracts. These allegations are inadequate to support a claim for tortious interference. *See, e.g.*, *Gateway Mgmt. Servs. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *26 (N.C. Super. Ct. May 9, 2018).

28. Construed liberally, the allegation that Morasso changed food vendors appears to concern a contract between Epic and a third-party vendor. As alleged, though, Morasso cannot be liable for interfering with that contract. At the time, Morasso was Epic's general manager. (Compl. ¶ 9.) Our courts have long held that "[a] party to a contract, including the party's managing agent, cannot be liable for wrongful interference of the contract." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *41 (N.C. Super. Ct. Oct. 21, 2016) (quoting *Palles v. Hatteras Inv. Partners LLC*, 2009 NCBC LEXIS 37, at *15 (N.C. Super. Ct. July 27, 2009)). As a matter of law, Morasso cannot be held liable for tortious interference with Epic's contract with a third-party food vendor.

29. The Court therefore grants Morasso's Rule 12(c) motion as to Epic's claim for tortious interference with contract. The claim is dismissed with prejudice.

### III.
### CONCLUSION

30. For all these reasons, the Court **ORDERS** as follows:

a. The Court **GRANTS** the motion as to the "Derivative Action" brought by Mack and Sponaugle. This claim is **DISMISSED** without prejudice for lack of standing.

b. The Court **GRANTS** the motion as to Mack and Sponaugle's individual claims for breach of the operating agreement, breach of fiduciary duty, trespass, tortious interference with contract, and unfair or deceptive trade practices. These claims are **DISMISSED** without prejudice for lack of standing.

c. The Court **DENIES** the motion as to Mack and Sponaugle's individual claims for declaratory judgment.

d. The Court **GRANTS** the motion as to Epic's claim for tortious interference with contract. The claim is **DISMISSED** with prejudice.

**SO ORDERED**, this the 3rd day of September, 2019.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases