MARSHALL SMITH v. L. T. HARTSELL ET AL.

(Filed 22 December, 1908.)

1. **Champerty and Maintenance—Officious Interference.**

   A contract or agreement will not be held within the condemnation of the principle relating to champerty or maintenance unless the interference by the party charged therewith is clearly officious and for the purpose of stirring up strife and continuing litigation.

2. **Same—Interest.** •

   An agreement of a party to give aid in the prosecution of a suit in the determination of which he has an actual interest is not invalid for maintenance or champerty.

3. **Same.**

   A party who has a valid debt against an estate of deceased may make a valid contract with the heirs at law to "do everything proper and legitimate and to aid them in every way to recover said estate," in a suit to be instituted for that purpose, in consideration of payment of his debt upon recovery; and the contract is not officious or objectionable as being one of maintenance or champerty, and is enforcible upon the recovery of the estate, the subject of the agreement.

4. **Public Policy—Witness—Contract—Agreement to Testify—Consideration.**

   An agreement by a party to give all true evidence when called on in any suit it may be deemed necessary to bring to recover

an estate in which he has an interest, is not void as against public policy, when there is no indication that he was to receive payment therefor beyond that which the law allows to a witness and to which he would be legally entitled.

**5. Pleadings—Demurrer—Allegations Taken as True.**

When an action is dismissed upon demurrer to a complaint the statements made therein will be accepted as true and interpreted in the light most favorable to the plaintiff.

**6. Pleadings—Demurrer—Fraud—Questions for Jury.**

Upon reversing on appeal the judgment of the trial judge sustaining a demurrer to a complaint, questions of fraud and undue influence alleged in the answer are for the consideration of the jury.

ACTION tried before *Justice, J.,* and a jury, at August Term, 1908, of CABARRUS.

The action was originally instituted by plaintiff against defendant L. T. Hartsell, and the complaint, among other things, alleged:

1. That George W. Robbins died intestate on 9 June, 1906, in the State of Arkansas, Howard County, having a family at the place of his residence, and also having a living wife, Caroline E. Robbins, and two children residing in Concord, N. C.

2. That at the date of the death of said George W. Robbins he owed the plaintiff the sum of $750, which Caroline E. Robbins, A. B. McClure, J. E. Robbins and H. M. McClure, heirs at law and distributees of said George W. Robbins, assumed and agreed to pay to the plaintiff, copy of which contract or memorandum of agreement is hereto attached and marked "Exhibit A," and asked to be taken as a part thereof.

3. That by virtue of said contract and information furnished by the plaintiff the said Caroline E. Robbins, A. B. McClure, J. F. Robbins and H. M. McClure effected a settlement, through the defendant as their attorney, in the latter part of August or the first days of September, 1906, by which they were to receive in cash from the estate of George W. Robbins, deceased, the sum of $2,250; that thereafter, to wit, on 28 September, 1906, the said Caroline E. Robbins, Bell McClure and H. M. McClure gave an order to the plaintiff L. T. Hartsell, the de-

fendant, to pay to the plaintiff the sum of $750 out of the first moneys coming into his hands for them or either of them from the estate of George W. Robbins, deceased, copy of which order is hereto attached and marked "Exhibit B," and asked to be taken as a part hereof.

4. That the defendant, the latter part of 1906 or early in the year 1907, received the money from said estate, and now has in his possession the sum of $775, $750 of which belongs to the plaintiff, having paid J. F. Robbins his full share of all the moneys coming from said estate, he being a minor at the time he executed the contract marked "Exhibit A," hereto attached.

5. That on the evening of 28 September, 1906, the plaintiff, through his attorney, presented the order (attached hereto and marked "Exhibit B") to the defendant, which was accepted, and that he stated that it was all right and that he would pay it out of the first moneys coming into his hands from said estate.

6. That plaintiff, through his attorney, made demand on the defendant for said amount immediately after he received the same, which was about the first of February, 1907.

The agreement referred to as "Exhibit A" was as follows:

"This agreement, made this 26 July, 1906, between Caroline E. Robbins, A. B. McClure and husband, H. M. McClure, heirs at law and distributees of George W. Robbins, deceased, parties of the first part, and Marshall Smith, party of the second part:

Witnesseth, That the said parties of the first part, in consideration of the covenants on the part of the party of the second part hereinafter contained, covenant and agree that in case they recover the estate of George W. Robbins they will pay out of said money the sum of $750, which the said George W. Robbins was justly due the said Marshall Smith; that the said Marshall Smith, party of the second part, in consideration of the covenants of the first part, hereby agrees to do everything proper and legitimate, and to aid them in every way to recover said estate; that he will give all and true evidence, when called upon, in any suit that it may be necessary to bring in reference to said estate.

"In witness whereof, the parties have hereunto subscribed their names, this the day and year above written.

> "CAROLINE E. (her X mark) ROBBINS,
> "A. B. McCLURE,
> "J. F. ROBBINS,
> "H. M. McCLURE."

This agreement was dŭly acknowledged, and the order made by the signers of the contract was set out, as follows:

"MR. L. T. HARTSELL, *Attorney,*

> *Concord, N. C.*

"DEAR SIR:—You will please pay to Marshall Smith the sum of $750 out of the first moneys coming into your hands for us or either of us from the estate of George W. Robbins, deceased, as per agreement with said Smith, entered into 26 July, 1906.

> "CAROLINE E. (her X mark) ROBBINS,   [Seal.]
> "BELL McCLURE,                       [Seal.]
> "H. M. McCLURE.                      [Seal.]
> "................................... [Seal.]"

This order was also acknowledged before a notary and privy examination of the *feme covert* taken and certified.

Defendant L. T. Hartsell answered, denying, on information and belief, the alleged indebtedness of the intestate, George W. Robbins, and in the same way avers that the order given was without consideration, and in substance denies that he accepted the order under circumstances that indicated or amounted to a promise to pay.

At January Term, 1908, the drawers of this order were at their own instance made parties defendant, and answered, alleging, among other things, that the contract, marked "Exhibit A," was obtained by false and fraudulent representations on the part of plaintiff, etc. Plaintiff replied, averring the existence and *bona fides* of the debt due from the intestate to himself, and set out in full the entire circumstances and dealings between himself and defendants, and alleged that demand was justly due and owing from defendants.

The cause having been called for trial, as stated, at August Term, 1908, and the jury selected and impaneled, the defendant demurred *ore tenus* and moved to dismiss the action, for that the complaint fails to state facts sufficient to constitute a cause of action. Motion allowed. Judgment, and plaintiff excepted and appealed.

*Adams, Armfield, Jerome & Maness* and *W. G. Means* for plaintiff.

*Montgomery & Crowell* for defendants.

HOKE, J., after stating the facts: Plaintiff's action having been dismissed as on demurrer, the statements of the complaint, which make for his recovery, will be accepted as true and interpreted in the light most favorable to him; and, applying this rule of construction, we do not take the view of the facts alleged in the pleadings that seems to have impressed the trial judge. From these facts it appears that plaintiff had a valid and existing debt against one George Robbins, who died intestate in the State of Arkansas, having a family there and leaving an estate valued at six or eight thousand dollars; that plaintiff, conferring with an attorney about his debt and claim, informed his attorney that George Robbins had a lawful wife and legitimate children living in North Carolina, and was told by the attorney that these last-named persons were the rightful owners of this property, subject to payment of the intestate's debts, and was advised by him to inform these parties of the true condition of affairs and confer and arrange with them about the payment of his debt; that, acting on this advice, plaintiff, being in North Carolina, did confer with the wife and children here, and entered into an agreement with them about the payment of his claim, marked "Exhibit A"; that he took an order from these defendants, or some of them, for the amount, $750, on L. T. Hartsell, who was acting as their attorney in the matter of recovering their interest in the estate of the intestate, the order, marked "Exhibit B," and this attorney, having received and having in hand several thousand dollars of the estate so recovered, accepted this order and has now on hand the amount of same, having retained it subject to the decision of the court on

plaintiff's demand made in this action. The action was originally instituted against L. T. Hartsell, the attorney, who answers, denying plaintiff's right to recover; and the defendants, the legitimate children in North Carolina, who signed the agreement and order, having been made parties defendant, also answered and resisted recovery, contending that the agreement on which the order was obtained was invalid by reason of stipulations for champerty and maintenance and because it contained an agreement to testify in the courts for a consideration, and was therefore contrary to public policy; but we are of opinion that neither position can be sustained on the facts as they now appear.

The term "maintenance" is properly defined as "an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it."

And "champerty" is a species of maintenance whereby a stranger makes a "bargain with a plaintiff or defendant to divide the land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense."

" 'Champerty' is a species of maintenance which at common law was an indictable offense. 'Maintenance' was an officious intermeddling in a lawsuit by a mere stranger, without profit. 'Champerty' involved an element of compensation for such unlawful interference by bargain for part of the matter in suit or some profit growing out of it." *Sommerville, J.,* in *Gilman v. Jones, infra,* and see *Torrence v. Shedd,* 112 Ill., 466.

The harsher application of the doctrine contained in these definitions, as it formerly obtained, has been very much relaxed and modified. Under the more recent decisions many exceptions have been recognized and established, and it has come to be very generally accepted that a contract or agreement will not be held within the condemnation of the principle indicated unless the interference is clearly officious and for the purpose of stirring up "strife and continuing litigation." Lawson on Rights and Remedies, Vol. 5, sec. 2400; *Gilman v. Jones,* 87 Ala., 691; *Thallhimer v. Brinkerhoff,* 3 Cowen, 623; 15 Amer.

Dec., 308. And there is well-considered authority to the effect that assistance of this kind will not be considered officious· when one has an interest or acts in the *bona fide* belief that he has. *McCall v. Capehart,* 20 Ala., 526; *Lewis v. Brown,* 36 W. Va., 1.

In the cases referred to will be found learned and interesting statements as to the change that has taken place in the application of this doctrine of maintenance and champerty to modern and existing conditions. Thus in *Gilman v. Jones,* 87 Ala., p. 699, it is said:

"There is much reason, it thus seems, for the relaxation of the old doctrines pertaining to the subject, so that they may be adapted to the new order of things in the present highly progressive and commercial age. Necessity and justice have accordingly forced the establishment of recognized exceptions to the doctrine of these offenses. Among these may be enumerated the following instances: Relationship by blood and marriage will often justify parties in giving each other assistance in lawsuits; and the relation of attorney and client, or the extension of charitable aid to the poor and oppressed litigant; and especially is an interference in a lawsuit excusable when it is by one who has, or honestly believes he has, a *valuable interest* in its prosecution. It is especially with the last-mentioned exception we are concerned in the present case, which, in our judgment, is controlled by it."

The principle is thus generally stated in 3 Amer. and Eng. Encyc. Law, p. 76: "It has been seen that the *gist* of the offense of maintenance is that the interference is *officious.* Where, therefore, a party either has, or honestly believes he has, *an interest,* either in the subject-matter of the litigation or in the question to be determined, he may assist in the prosecution or defense of the suit, either by furnishing counsel or contributing to the expenses; and may, in order to strengthen his position, purchase the interest of another party in addition to his own. The interest may be either small or great, certain or uncertain, vested or contingent; but it is essential that it be distinct from what he may acquire from the party maintained."

And again, on page 701: "We may safely say that the whole doctrine of maintenance has been modified in recent times so as

to confine it to strangers who, having no valuable interest in a suit, pragmatically interfere in it for the improper purpose of stirring up litigation and strife. And champerty, which is a species of maintenance attended with a bargain for a part or the whole of the thing in dispute, does not exist in the absence of this characteristic of maintenance. If the pecuniary interest of a person, even though he own no part of the immediate subject-matter of the suit, be so connected with it collaterally in any way as to be diminished or increased in value by the result of such suit, we can perceive no principle of public policy that ought to forbid such person from taking proper care that such interest shall be properly protected in the courts."

And in *Thallhimer's case, supra, Sanford, Chancellor,* said: "Where the person promoting the suit of another has any interest whatever in the thing demanded, distinct from that which he may acquire by an agreement with the suitor, he is in effect also a suitor, according to the nature and extent of his interest. To deny to such a person the benefit which he might receive from a suit conducted mainly or partly for the benefit of another would be to close the temple of justice against all persons not parties to the suit and yet having interest in the subject of litigation which may be affected by the determination of the cause. It is accordingly a principle that any interest whatever in the subject of the suit is sufficient to exempt him who gives aid to the suitor from the charge of illegal maintenance. Whether this interest is great or small, vested or contingent, certain or uncertain, it affords a just reason to him who has such an interest to participate in the suit of another who has or claims some right to the same subject. Bac. Abr., title Maintenance, B, and the several authorities there cited. Where there is consanguinity or affinity between the suitor and he who gives aid to the suit, the voice of nature and the language of the law equally declare that such assistance is not unlawful maintenance. The relation of landlord and tenant, that of master and servant, acts of charity to the poor, and the exercise of the legal profession are all cases in which it is not unlawful to give aid in the conduct of suits before the courts of justice. Upon all such cases these laws were never intended to operate. They

were intended to prevent the interference of strangers having no pretense of right to the subject of the suit and standing in no relation of duty to the suitor. They were intended to prevent traffic in doubtful claims and to operate upon buyers of pretended rights who had no relation to the suitor or the subject otherwise than as purchasers of the profits of litigation."

Applying the principles so well and clearly stated in these citations, and as the facts are to be now considered, the stipulations of this agreement do not constitute either champerty or maintenance. There is no indication that he is to contribute to the costs and expenses of any suit commenced or contemplated. On the contrary, in reference to this matter, the agreement on his part is confined to conduct that is "proper and legitimate"; it is so nominated in the bond. And if it were otherwise, the interference in this matter on the part of plaintiff could in no sense be considered officious. He had a valid debt against G. W. Robbins; the contract so states, and the allegations in the complaint are definite and full to this same effect; and if this is true his claim could have been collected out of the estate; and the defendants, who are endeavoring to recover this estate, as the distributees and heirs at law of G. W. Robbins, and who succeeded in their efforts, agreed that in case of recovery they would pay off his claim. The interest in the fund and its recovery was sufficient, we think, to justify and uphold a much more exacting stipulation on the part of plaintiff than that which he assumed in this agreement.

This position in no way conflicts with the decision of this Court in *Munday v. Whissenhunt,* 90 N. C., 459, to which we were referred by defendant's counsel. That was a stipulation for one-half of the recovery in consideration of services in the conduct and management of a lawsuit by one who was not an attorney at law and who had no interest whatever in the subject-matter of the litigation or its results, except what arose to him under and by virtue of the contract he was seeking to enforce. It was therefore clearly officious and came directly under the condemnation of the principle we apply to the present case.

Nor do we think the objection tenable that the agreement is void as contrary to public policy, because it contains a stipula-

tion to testify in a court of justice. The authorities are to the effect that all contracts to *suppress* testimony that is competent and relevant in a judicial investigation are contrary to public policy. Such contracts tend to obstruct the due course of justice and are invalid. And so contracts to procure testimony to establish a given result, or contracts to testify for a sum made to depend on the recovery or the amount of it, offering as they do enticement to perjury, and so tending to pervert the course of justice, are likewise forbidden. *Martin v. Amos,* 35 N. C., 201; *Goodrich v. Tenney,* 144 Ill., 422; *Turk v. Miller,* 14 Montana, 467; *Dawkins v. Gill,* 10 Ala., 206.

But this contract, as we interpret it, does not necessarily come under the condemnation of any of these decisions. The agreement of plaintiff in this respect was to give all true evidence "when called on in any suit it may be necessary to bring to recover the estate." It does not appear—certainly not on the face of the agreement—that he is to receive more or less than the usual or ordinary fees of a witness for so testifying. He only agrees to do what is entirely proper for him to do, and which the law would compel him to do without any agreement. Standing alone, as a rule, this agreement would not be a sufficient consideration to uphold an executory contract, but it is not an immoral or illegal stipulation and should not have the effect of avoiding a contract that is otherwise legal and binding. *Cobb v. Cowdery,* 40 Vt., 25; *Nickelson v. Wilson,* 60 N. Y., 362; *Wellington v. Kelly,* 84 N. Y., 543. According to the complaint, the facts of which are admitted, the plaintiff held, as heretofore stated, a valid and just debt against the estate of G. W. Robbins, and could have enforced its collection by law. This course would and might have involved delay, and defendants, who were the true owners of the estate, agreed to pay plaintiff's claim and just debt, for which these assets were liable, whenever this estate was recovered and came into their hands; the plaintiff, on his part, to do everything that was "legitimate and proper to aid them, and to give true evidence whenever called on." There are allegations of fraud and undue influence and other impeaching averments made by defendants, but these are questions to be referred to the jury.

On the aspect of the matter presented for our consideration by this demurrer we are of opinion there was error in dismissing plaintiff's action, and the order to that effect must be set aside. The question as to the effect of the acceptance of the order by defendant Hartsell is deferred until the facts concerning it are more fully declared. We have only considered and dealt with the questions presented and argued before us.

