IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-982-2

Filed 3 December 2024

Mecklenburg County, No. 21-CVS-8459

MARY A. HILL, Plaintiff,

v.

RENEE P. EWING, CURTIS E. EWING, HERMAN T. EWING, NATHANIEL V. EWING, and MONICA Y. EWING, the heirs of Annie Marie Ewing, and CORA LEE BRANHAM, HERMAN BRANHAM, ROSLYN BRANHAM PAULING, LARUE BRANHAM, and LEROY BRANHAM, the heirs of Annie Branham, BRIGHT & NEAT INVESTMENT LLC, THOMAS RAY, CLARISSA JUDIT VERDUGO GAXIOLA (aka CLARISSA J. VERDUGO) AND GEOFFREY HEMENWAY, Defendants.

Appeal by plaintiff from order entered 3 April 2023 by Judge David H. Strickland in Mecklenburg County Superior Court. Heard in the Court of Appeals 16 April 2024. Petition for rehearing allowed by our Court 21 October 2024. The following opinion supersedes and replaces the opinion filed 20 August 2024.

> *The Odom Firm, PLLC, by Thomas L. Odom, Jr., and Martha C. Odom, for plaintiff-appellant.*
>
> *Alexander Ricks, PLLC, by Amy P. Hunt, for defendant-appellee Geoffrey Hemenway.*

DILLON, Chief Judge.

This case arises from a dispute over a parcel of land located in the Berryhill Township area of Mecklenburg County (the "Property"). Plaintiff Mary A. Hill purportedly owns a one-half interest in the Property. Until recently, the other half

interest was owned by the defendants with "Branham" as their last name, who are the heirs of Annie Branham (the "Branham Defendants").

This present appeal does not concern Plaintiff's claim regarding the true ownership in the Property. Rather, this appeal concerns her claims against an attorney, Defendant Geoffrey Hemenway ("Defendant Attorney"), who was hired to represent the interests of the Branham Defendants. Specifically, Plaintiff brought claims against Defendant Attorney for the aiding and abetting of slander of title, champerty, and maintenance. The trial court dismissed these claims against Defendant Attorney pursuant to Rule 12(b)(6) of our Rules of Civil Procedure. Plaintiff appeals that interlocutory order.

On 20 August 2024, we filed an opinion affirming in part, reversing in part, and remanding for further proceedings. On 21 October 2024, we granted Defendant's petition to rehear the matter. After reconsidering the matter, for the reasoning below, we affirm.

## I. Background

As this is an appeal from a Rule 12(b)(6) dismissal, we must assume the factual allegations of Plaintiff's complaint are true, but not the conclusions of law. *See Sutton v. Duke*, 277 N.C. 94, 98 (1970). These factual allegations show as follows:

In 1945, Pearlie Ellison purchased the Property. In 1970, Ms. Ellison died intestate. Her two daughters, Cora Washington and Annie Branham, each inherited a one-half interest in the Property.

In 2008, Ms. Branham died, and her heirs (the "Branham Defendants") acquired her one-half interest in the Property.

In 1973, Ms. Washington died, leaving her one-half interest to her husband Herman Washington, in accordance with her will. She did not leave any interest in the Property to her daughter Annie Marie Ewing. And neither Ms. Ewing nor *her* heirs (the "Ewing Defendants") ever acquired any interest in the Property, as Mr. Washington eventually left this half-interest to *his* daughter, Plaintiff Mary Hill, upon his death in 2011. During his lifetime, Mr. Washington did, however, grant an easement in the Property to Piedmont Natural Gas Company, Inc., ("Piedmont") for $95,000.00.

Accordingly, as of 2011, Plaintiff owned a one-half interest in the Property (through her father Herman Washington), subject to Piedmont's easement interest; and the Branham Defendants owned the other one-half interest in the Property.

For a number of years, up through 2020, Mr. Washington—and then his daughter (Plaintiff) after his death—paid all ad valorem taxes on the Property.

In early 2020, Defendant Thomas Ray, the owner of Defendant Bright & Neat Investment LLC ("Defendant Bright & Neat") contacted the Branham Defendants and the Ewing Defendants, "advising them that they had claims against [Plaintiff and Piedmont] and he would assist them with money and pay for an attorney to prosecute alleged claims against [Plaintiff and Piedmont] and they would divide the recovery of any money, with Defendant Ray receiving 25%."

Defendant Ray hired Defendant Attorney to assist him in his efforts to help the Branham Defendants and the Ewing Defendants. Defendant Attorney prepared a non-warranty deed, with no title examination, wherein the Ewing Defendants and the Branham Defendants granted *to themselves* and each other the Property, making no mention in the deed to Plaintiff's interest in the Property. (That is, this non-warranty deed reflected the Branham Defendants and the Ewing Defendants as both the grantors and the grantees.) Plaintiff alleges Defendant Attorney prepared the deed in this way, even though he was well aware of Plaintiff's interest in the Property.

In any event, in May 2020, the Ewing Defendants and the Branham Defendants executed the deed, and Defendant Attorney recorded the deed.

Shortly thereafter, Defendant Attorney prepared multiple letters that were sent to Plaintiff and Piedmont in which he claimed to be representing the Branham Defendants and the Ewing Defendants.

In November 2020, the Ewing Defendants and the Branham Defendants executed a document purportedly granting Piedmont an easement on the Property in exchange for $12,000. This money was split among the Branham Defendants and the Ewing Defendants, with $3,000 going to Defendant Ray as his 25% facilitation fee.[1]

---

[1] In August 2021, the Branham Defendants deeded their "one-half interest" in the Property to Defendant Bright & Neat (Defendant Ray's LLC) pursuant to a non-warranty deed. Defendant Bright & Neat now claims to own a one-half interest in the Property as tenants in common with Plaintiff. Defendant Ray and/or Defendant Clarissa Verdugo own all of the ownership interest in Bright & Neat.

Plaintiff commenced this action, stating claims against Defendant Ray for champerty, maintenance, and slander of title. Plaintiff also brought claims against Defendant Attorney for aiding and abetting Defendant Ray's tortious acts.

The trial court dismissed Plaintiff's claims against Defendant Attorney pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff appeals.

## II. Appellate Jurisdiction

The trial court determined the dismissal to be a final judgment as to Defendant Attorney and certified there was no just reason for delay, thus allowing for immediate appeal to our Court. *See* N.C.G.S. § 1A-1, Rule 54 (2023).

## III. Analysis

On appeal, our Court reviews *de novo* a trial court's ruling on a motion to dismiss under Rule 12(b)(6). We must determine "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Thompson v. Waters*, 351 N.C. 462, 463 (2000).

### A. Aiding and Abetting Champerty and Maintenance

Plaintiff first alleges that Defendant Attorney aided and abetted Defendant Ray in his alleged violations of champerty and maintenance.

Maintenance is "an officious intermeddling in a suit which belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it," and champerty is a type of maintenance "whereby a stranger makes a bargain with a plaintiff or defendant to divide the land or other matter sued for between them

5

if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense." *Smith v. Hartsell*, 150 N.C. 71, 76 (1908).

In her complaint, Plaintiff alleges that Defendant Ray notified the Ewing Defendants and the Branham Defendants about potential claims they had against Plaintiff, that he told them he would pay for the prosecution of those claims, that he would receive 25% of any money recovered from the prosecution of those claims, that he engaged Defendant Attorney to pursue those claims, and that Defendant Attorney indeed engaged in legal work in the pursuit of those claims.

Champerty and maintenance are torts recognized in North Carolina. *See*, *e.g.*, *Raymond v. North Carolina Police Benevolent Ass'n, Inc.*, 365 N.C. 94, 96 (2011). However, neither party has cited a case in which it was held that North Carolina recognizes a cause of action for *aiding and abetting* champerty and maintenance; and we decline to do so. In so holding, we are guided by decisions from our Court and our Business Court. For instance, where a party who was the target of civil suits sued the attorney for barratry, we held that, though "barratry" is a recognized common law crime in North Carolina, our state does not recognize a civil cause of action for barratry. *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 579 (2002). We further held the third party could not maintain a civil claim *against the attorney who performed the work* for his client alleged to have committed champerty and maintenance, based on attorney-client relationship. *Id.* at 580−81 (relying on *Smith v. Hartsell*, 150 N.C. 71, 77 (1908)).

6

In another case, though we recognized a claim for breach of fiduciary duty, we refused to recognize a cause of action for *aiding and abetting* this breach. *BDM Invs. v. Lenhil, Inc.*, 264 N.C. App. 282, 302 (2019). And our Business Court, relying on our *BDM* decision, refused to recognize a claim for *aiding and abetting* constructive fraud. *See Brashaw v. Maiden*, 2020 NCBC LEXIS 106, *40 (2020).

Finally, we note that the deed prepared by Defendant Attorney makes no warranty that Plaintiff did not own an interest in the Property. Rather, the deed was a non-warranty deed, specifically stating on its face that "[t]he Grantor makes no warranty, express or implied, as to title to the property hereinabove described."

Accordingly, we conclude the trial court did not err in dismissing Plaintiff's claims against Defendant Attorney for aiding and abetting champerty and maintenance.

### B.     Slander of Title/Aiding and Abetting Slander of Title

Plaintiff next alleges that Defendant Attorney aided and abetted Defendant Ray in his alleged slander of title. Plaintiff's complaint could be construed as alleging that Defendant Attorney, in his own right, engaged in slander of title. However, for the reasoning below, we conclude that Plaintiff failed to allege a claim for slander of title and, accordingly, that the trial court properly dismissed Plaintiff's claim against Defendant Attorney for slander of title or for aiding and abetting Defendant Ray in his alleged slander of title.

"The elements of slander of title are: (1) the uttering of slanderous words in

7

regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) *special damages.*" *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 30 (2003) (emphasis added).

Our Supreme Court has instructed that "the gist of [a slander of title claim] is the special damages sustained." *Cardon v. McConnell*, 120 N.C. 461, 462 (1897). Regarding "special damages," that Court has stated that "general damages are such as might accrue to any person similarly injured, while special damages are such as did in fact accrue to a particular individual by reason of the particular circumstances of the case." *Penner v. Elliott*, 225 N.C. 33, 35 (1945).

Our General Assembly has provided in our Rules of Civil Procedure that "[w]hen items of special damages are claimed[,] each shall be averred." N.C.G.S. § 1A-1, Rule 9(g).

Citing that Rule, our Supreme Court has determined that where special damages is an element of a cause of action, the plaintiff *must* allege facts showing how (s)he suffered special damages; otherwise, the complaint is subject to dismissal under Rule 12(b)(6):

> [D]espite the liberal nature of the concept of notice pleading, a complaint must nonetheless state enough to give substantive elements of at least some legally recognized claim or it is subject to dismissal under Rule 12(b)(6).
>
> Moreover [Rule] 9(g) requires that when items of special damages are claimed, each shall be averred. Thus, where the special damage is an integral part of the claim for relief,

> its insufficient allegation could provide the basis for dismissal under Rule 12(b)(6).

*Stanback v. Stanback*, 297 N.C. 181, 204 (1979) (internal marks omitted).

Indeed, in *Cardon,* our Supreme Court instructed that unless a plaintiff seeking damages for slander of title can show how he suffered special damages from the false/malicious statements of the defendant, "he cannot maintain the action." 120 N.C. at 462. *See also Ringgold v. Land*, 212 N.C. 369, 371 (1937) (holding that a complaint seeking damages for slander *per quod* which fails to allege facts showing special damages is properly dismissed).[2]

In *Stanback*, for instance, our Supreme Court held that mere allegations that the plaintiff had to pay attorneys to challenge the false statements of the defendant and that the plaintiff suffered a certain dollar amount of special damages, without more, are inadequate. *Stanback*, 297 N.C. at 204. Specifically, in that case, the Court held that dismissal was proper for failure to allege special damages where the plaintiff alleged that she "has been damaged in that she has incurred expenses in defending said claim and has suffered embarrassment, humiliation, and mental anguish in the amount of $100,000.00." *Id.*

---

[2] Our Court, likewise, has held that where special damages is an element of a cause of action, the failure to allege facts showing special damages subjects the complaint to dismissal. *See Casper v. Chatham Cnty.*, 186 N.C. App. 456 (2007) (holding that dismissal of petition by landowners challenging a special use permit granted to a neighbor was proper where landowners failed to allege how they suffered special damages); *Donvan v. Fiumara*, 114 N.C. App. 524, 527 (1994) (holding that complaint for slander *per quod* properly dismissed where plaintiff failed to allege special damages).

Accordingly, it is incumbent on a plaintiff seeking damages for slander of title to allege in her complaint how she suffered special damages. That is, it is not enough simply to allege generally that she was damaged because of the false and malicious statements contained in the deed made regarding her interest in the Property or that she hired an attorney to challenge the false statements. For instance, in *Cardon*, our Supreme Court held that the plaintiff suffered special damages for a slander of title where the plaintiff showed that the defendant interfered in the plaintiff's attempt to sell the property, with evidence that the defendant had falsely claimed to a prospective buyer that the plaintiff did not own the property, thereby causing the sale to fail. 120 N.C. at 461.

Here, Plaintiff has not alleged facts showing special damages suffered. She simply alleges that she suffered damages in excess of $25,000 by Defendants' actions associated with false statements concerning the Property's title and has incurred expenses in hiring an attorney. Plaintiff has alleged that some of the Defendants split proceeds from the sale of an easement to Piedmont in 2020. However, she does not allege how she suffered special damages from that sale. That sale did not affect Plaintiff's interest in the Property, as a proper title search would have revealed Plaintiff's one-half interest and Plaintiff did not join in that 2020 transaction. Accordingly, her record interest was not affected by that sale. Also, Plaintiff's father (Mr. Washington) had already sold easement rights to Piedmont before his death—though he owned only a one-half interest in the Property.

10

In sum, since Plaintiff has not alleged facts showing special damages—an essential element of slander of title—we conclude the trial court properly dismissed Plaintiff's claims against Defendant Attorney associated with slander of title.

AFFIRMED.

Judge GRIFFIN concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The majority's opinion correctly recognizes champerty and maintenance are actionable torts in North Carolina. *See Raymond v. N.C. Police Benevolent Ass'n*, 365 N.C. 94, 96, 721 S.E.2d 923, 925 (2011); *Wright v. Commercial Union Ins. Co.*, 63 N.C. App. 465, 469, 305 S.E.2d 190, 192 (1983). The majority's opinion now purports to hold no common law tort holds a third party accountable for *aiding and abetting* the admittedly recognized torts of champerty and maintenance and slander of title.

In this panel's prior opinion, we unanimously and correctly reversed the trial court's Rule 12(b)(6) dismissal of Plaintiff's claims against Geoffrey Hemenway, Defendant Attorney, and held he had aided and abetted the other defendants in their torts of champerty and maintenance and slander of title. I respectfully dissent.

## IV. Standard of Review

This Court's role on review of a Rule 12(b)(6) motion to dismiss is to determine *de novo* "whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which *relief can be granted under some legal theory*." *Thompson v. Waters*, 351 N.C. 462, 463, 526 S.E.2d 650, 650 (2000) (emphasis supplied); *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

## V. Aiding and Abetting Champerty and Maintenance

Maintenance is "'an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute

or defend it.'" *Smith v. Hartsell*, 150 N.C. 71, 76, 63 S.E. 172, 174 (1908). Champerty is a type of maintenance "whereby a stranger makes a 'bargain with a plaintiff or defendant to divide the land or other matter sued for between them if they prevail at law, whereupon the champertor is to carry on the party's suit at his own expense.'" *Id..*

Since its enactment in 1715, N.C. Gen. Stat. § 4-1 has declared all parts of the common law in full force

> All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

N. C. Gen. Stat. § 4-1 (2023).

Aiding and abetting is a civil common law tort claim to hold a person responsible and liable for the actions of other Defendants when the aider and abettor provided substantial assistance or encouragement to the wrongdoing. *See* RESTATEMENT (SECOND) OF TORTS § 876 (1979).

To show Defendant Attorney aided and abetted the other Defendants to survive a Rule 12 (b)(6) dismissal motion, Plaintiffs must allege facts to support three elements: (1) Defendants breached a duty to Plaintiff; (2) Defendant Attorney knowingly and substantially assisted the other Defendants in breaching the duty;

and, (3) Defendant Attorney was aware of his role and actions in promoting the breach of duty at the time he provided assistance. *See id.*

Because Defendant Attorney is a licensed member of the North Carolina State Bar, Plaintiff's allegations assert: (1) Defendant Attorney's client(s) owed a duty to Plaintiff as a third party; (2) Defendant Attorney was aware of the duty owed by his client(s) to her as a third party; (3) Defendant Attorney's client(s) breached that duty and committed torts against her as that third party; (4) Defendant Attorney was aware of the breach and torts committed by his client(s); (5) Defendant Attorney assisted the client(s) in committing the torts; and, (6) Plaintiff as third party suffered damages.

Plaintiff's allegations in her complaint, which must be taken as true and reviewed in the light most favorable to her as the non-moving party, allege: (1) Defendant Attorney was hired by Defendant Ray to represent the third party Branham Defendants and the Ewing Defendants; (2) Defendant Attorney and Defendant Ray notified the Ewing Defendants and the Branham Defendants about potential claims they may have against Plaintiff; (3) Defendant Ray had told the Ewing Defendants and the Brenham Defendants that Defendant Ray or his company would pay for the prosecution of those claims and would receive 25% of any money recovered from the prosecution of those claims; (5) Defendant Ray had hired and paid for Defendant Attorney to pursue those claims; (6) Defendant Attorney had engaged in legal work in the pursuit of those claims; and, (7) Defendants split the entire

proceeds from the sale of an easement to Piedmont Natural Gas in 2020.

Defendant Attorney prepared a non-warranty deed, with no title examination, wherein the third party Ewing Defendants and the Branham Defendants granted to themselves and each other "all rights, title, and interest" in the Property, making no mention in the deed of Plaintiff's record interest in the Property. Plaintiff's complaint further alleges Defendant Attorney had prepared the deed conveying all the property, even though he was well aware of Plaintiff's undisputed record ½ interest in the Property. The Ewing Defendants and Branham Defendants executed the deed he had prepared, and Defendant Attorney recorded the deed.

In August 2021, the Branham Defendants further deeded their purported "1/2 interest" in the Property to Defendant Bright & Neal, Defendant Ray's LLC, pursuant to a further non-warranty deed Defendant Attorney had also prepared and recorded. Defendant Bright & Neal now claims to own a one-half undivided interest in the Property as tenant-in-common with Plaintiff. Defendant Ray and/or Defendant Clarissa Verdugo are the sole owners of Bright & Neal.

All of these allegations, taken as true and reviewed in the light most favorable to Plaintiff, compel denial of Defendants' Rule 12(b)(6) as we had earlier agreed. *Thompson*, 351 N.C. at 463, 526 S.E.2d at 650; *Leary*, 157 N.C. App. at 400, 580 S.E.2d at 4. Plaintiff sufficiently alleged claims against Defendant Attorney for aiding and abetting Defendant Ray's alleged conduct involving champerty and maintenance and slander of title to overcome Defendant Attorney's Rule 12(b)(6)

motion to dismiss for failure to state a claim. The court erred in dismissing Plaintiff's complaint under Rule 12(b)(6) against Defendant Attorney as to those claims.

## VI.    Aiding and Abetting Slander of Title

Plaintiff alleges Defendant Attorney aided and abetted Defendant Ray in his alleged slander of title.   "The elements of slander of title are: (1) the uttering of slanderous words in regard to the title of someone's property; (2) the falsity of the words; (3) malice; and (4) special damages." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 30, 588 S.E.2d 20, 28 (2003).

Plaintiff specifically alleged "Defendants' hostile claims of ownership of the Garrison Road Parcel have caused plaintiff Mary Hill to suffer special damages." Plaintiff also alleged in her Prayer for relief for the court to "5. Award Plaintiff Mary Hill consequential *and special damages* against the defendants, jointly and severally in an amount to be determined at Trial." (emphasis supplied), and "6. Award costs, including reasonable attorney fees be taxed against defendants, jointly and severally"

Plaintiff also alleges she had suffered damages in excess of $25,000, plus interest, by Defendants' actions associated with false and defamatory statements concerning the Property's title.

In *Cardon*, our Supreme Court held a plaintiff had suffered special damages for slander of title, where the plaintiff showed the defendant had interfered in the plaintiff's attempt to sell the property, with evidence tending to show the defendant had falsely claimed to a prospective buyer the plaintiff did not own the property,

causing the sale to fail.  Our Supreme Court stated, "the gist" of a slander of title claim "is the special damage sustained."  *Cardon v. McConnell*, 120 N.C. 461, 462, 27 S.E. 109, 109 (1897).

Plaintiff specifically alleged special damages, an essential element of slander of title, to survive dismissal under Rule 12(b)(6) for failure to state a claim.  The trial court erred by dismissing Plaintiff's claims against Defendant Attorney alleging aiding and abetting slander of title. *Id.*

## VII.    Conclusion

As Officers of the Court, attorneys, who focus only on their client's needs, desires, and expectations, without appreciating the consequences of what is being accomplished, and in particular, how those services and conduct affect third parties, steps into and shares his clients' liability for torts arising from his aiding and abetting their tortious actions.  *See* N. C. Gen. Stat. § 4-1; RESTATEMENT (SECOND) OF TORTS § 876; *Cardon*, 120 N.C. at 462, 461, 27 S.E. at 109.

Plaintiff's complaint alleges claims upon which relief can be granted. The trial court erred in dismissing Plaintiff's complaint under Rule 12(b)(6).  I respectfully dissent.